**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CAROL NORMAN, ) | |
| ) | CASE NO. 1:14-cv-2374 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE SARA LIOI |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Carol Norman ("Norman") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

**I. Procedural History**

On August 22, 2011, Norman filed an application for POD and DIB alleging a disability onset date of September 21, 2009. (Tr. 13.) Her application was denied both initially and upon reconsideration. *Id*.

On May 30, 2013, an Administrative Law Judge ("ALJ") held a hearing during which Norman, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 13.) On July 2, 2013, the ALJ found Norman was able to perform her past relevant work and, therefore, was not disabled. (Tr. 20-22.) The ALJ's decision became final when the Appeals

Council denied further review.  (Tr. 1-4.)

## II.  Evidence

*Personal and Vocational Evidence*

Age sixty-five as of her date last insured, Norman is a "person of advanced age" under social security regulations.  *See* 20 C.F.R. § 404.1563(e).  (Tr. 15, 59.)  She has a bachelor's degree (Tr. 40) and past relevant work as a case worker and social services aide.  (Tr. 20.)

## III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Norman was insured on her alleged disability onset date, September 21, 2009 and remained insured through March 13, 2013.  (Tr. 15.)  Therefore, in order to be entitled to POD and DIB, Norman must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period precludes an entitlement to

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Norman established medically determinable, severe impairments, due to degenerative joint disease, osteoarthritis, and lumbar stenosis; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 15-16.) Norman was found capable of performing her past relevant work, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work. (Tr. 16, 20.) The ALJ, therefore, determined that Norman was not disabled. (Tr. 20-22.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing*

*Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

### *Ability to Perform Past Relevant Work*

In her first assignment of error, Norman asserts that the ALJ erred at Step Four of the sequential process by determining that she could perform her past relevant work. (ECF No. 16 at 10-14.) Specifically, Norman argues that the ALJ erred by finding that she could perform her past relevant work as it is generally performed in the national economy rather than the manner in which she actually performed it. *Id*. The Commissioner asserts that Norman misunderstands the requirements of Step Four, as the ALJ need only determine whether a claimant can perform her past relevant work as it is actually performed OR as it is generally performed in the national economy. (ECF No. 18 at 11-12.) As discussed below, the Court agrees with the Commissioner.

Norman had the burden to present evidence to the ALJ which showed she could not perform her past relevant work. *See e.g., Atterberry v. Sec'y of Health and Human Servs.*, 871 F.2d 567, 569 (6th Cir. 1989); *Parker v. Sec'y of Health and Human Servs.*, 1991 WL 100547, at **1 (6th Cir. June 11, 1991). Pursuant to 20 C.F.R. § 404.1520(f), impairments "must prevent you from doing your past relevant work. If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment, which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work.... If you can still do this kind of work, we will find that you are not disabled." Social Security Ruling No. 82-61, 1982 SSR LEXIS 31 (1982) clarified the Social Security Administration's policy "in determining whether a claimant can perform his or her past relevant work, *i.e.*, whether the claimant retains the residual functional capacity (RFC) to perform the physical and mental demands of the kind of work he or she has done in the past." SSR 82-61 identified three possible tests for determining whether a claimant retains the ability to perform past relevant work: (1) "[w]hether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job," (2) "[w]hether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job *as he or she actually performed it*," and, (3) "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job *as ordinarily required by employers throughout the national economy*."[2] *Id*. (emphasis added).

Norman testified that she was a licensed social worker ("LSW") and had worked with adolescents with mental health and chemical dependency issues. (Tr. 40.) She had worked for Catholic Charity Services and Centers for Families and Children. (Tr. 39-46.) The VE testified that Norman's past work at Catholic Charities would be categorized as a "case worker" by DOT § 195.107-010, "though there's just a slew of alternative titles attached with it, social worker,

---

[2] SSR 82-61 explicitly states that "The Dictionary of Occupational Titles (DOT) descriptions can be relied upon -- for jobs that are listed in the DOT -- to define the job as it is usually performed in the national economy," while acknowledging that "some individual jobs may require somewhat more or less exertion than the DOT description."

behavioral counselor, megalist." (Tr. 53.) The VE further testified that, according to the DOT, such work is classified as "sedentary and skilled with an SVP of 7." *Id*. Nonetheless, the VE stated that Norman actually performed her job at the medium level. (Tr. 53.) For the work performed at Centers for Families and Children, the VE categorized that work as a social services aide, DOT § 195.367-034, light and skilled with an SVP of 6. *Id*. The VE also opined that the work was light as performed by Norman. *Id*.

> The ALJ posed the following hypothetical to the VE:
>
> I'm going to give you a hypothetical question and I'd like you to consider a person with the same age, education and past work as the claimant who is able to occasionally lift 10 pounds and frequently lift less than 10 pounds, is able to stand and walk four hours of an eight hour work day, is able to sit for six hours of an eight hour work day, push and pull would be limited in the bilateral lower extremities to no foot controls. This hypothetical individual can occasionally climb ramps and stairs, can never climb ladders, ropes or scaffolds and can never kneel, crouch or crawl. Would such a hypothetical individual be able to perform the claimant's past relevant work as those occupations are either generally or actually performed?

(Tr. 54.)

The VE testified that such an individual could perform the case worker position as set forth in the DOT, but she would be unable to perform the job of a social service aide because of the operation of foot controls. (Tr. 54.)

The ALJ added another limitation to the hypothetical — a sit/stand option to shift every twenty (20) minutes. (Tr. 55.) The VE stated that such an individual could not perform the case worker job as Norman actually performed it because it involved potential restraint of patients, but did think the job would allow for a sit/stand option. (Tr. 55.) The VE further explained that the DOT will never address a sit/stand option, but that in her experience dealing with social workers over the course of her career, body position was not a limiting factor. *Id*.

In the decision, the ALJ accurately summarized the VE's testimony that Norman "could not perform her past relevant work as a social services aide, but could perform the work as case worker as generally performed but not as actually performed by the claimant." (Tr. 21.) Based on the VE's testimony, the ALJ concluded that Norman could perform her past relevant work as a case worker, as generally performed in the national economy, and, therefore, was not disabled.

6

Norman asserts that the ALJ's finding that she can perform her past relevant work is not supported by substantial evidence, because her testimony establishes that the job she performed required functional abilities in excess of the RFC and in excess of the case worker job as defined by the DOT. (ECF No. 16 at 10-14.) The Court finds this argument unavailing. The ALJ specifically found that Norman could perform her past job of a caseworker *as it is generally performed*. SSR 82-61 explicitly acknowledges that "[a] former job performed in [sic] by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy." 1982 SSR LEXIS 31 at *4. However, even "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job *but can perform the functional demands and job duties as generally required by employers throughout the economy*, **the claimant should be found to be 'not disabled.'**" *Id*. (emphasis added); *accord Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002) (finding it immaterial if claimant could not perform past relevant work as she actually had performed in the past, as the ALJ also found claimant was capable of performing her past relevant work as that work is generally performed in the economy); *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 557 (6th Cir. 1995) (treating Step Four as a two-step inquiry where an ALJ first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant, and, if not, then proceeding to determine whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy).

In this case, the ALJ found that Norman can perform her past relevant work as it is generally performed in the national economy. (Tr. 21.) Substantial evidence supports this determination, as the VE testified at the administrative hearing that Norman's past relevant work was as a case worker, which is generally considered sedentary. (Tr. at 53.) The VE further testified that a hypothetical person with Norman's RFC and past relevant work experience could perform her past work. (Tr. 54.) The ALJ relied upon this testimony. The VE's testimony constitutes substantial evidence to support the ALJ's Step Four determination that Norman can

perform her past relevant work as it is generally performed. Consequently, Norman has not met her burden of proving she is unable to perform her past relevant work. As such, her first assignment of error is without merit.

***Step Five and Transferability of Skills***

Norman argues that the ALJ erred by failing to perform a Step Five analysis, and further failed to consider whether Rule 201.06 compelled a finding of disability. (ECF No. 16 at 14-16.) The Commissioner asserts that because the ALJ appropriately ended the sequential evaluation at Step Four, her Step Five arguments are irrelevant.

Rule 201.06 compels a finding that a claimant is disabled where the following criteria is satisfied: (1) the claimant is of advanced age, (2) with a high school education or more, and (3) previous work was skilled or semi-skilled, but the skills are not transferable. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.06. Norman takes issue with the ALJ's failure to make a determination as to whether her skills were transferable. (ECF No. 16 at 14-16.)

Pursuant to 20 C.F.R. § Pt. 404, Subpt. P, App. 2 § 200.00 Introduction, the rules or grids "reflect the major functional and vocational patterns which are encountered in cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity ***and*** the individual's impairment(s) prevents the performance of his or her vocationally relevant past work." As discussed above, the ALJ made a proper finding at Step Four that Norman could perform her past relevant work as that job is generally performed. As such, Rule 201.06 is inapplicable, and no error resulted from a failure to discuss the transferability of skills. *See also Shields v. Chater*, 77 F.3d 493 (10th Cir. 1996) (finding claimant's argument concerning the use of the grids "legally frivolous" noting that "[l]egally, the grids are irrelevant at step four, because they relate to vocational factors that the Secretary does not consider until step five."); *Bennett v. Colvin*, 2015 WL 5693602 at *6 (N.D. Ala. Sept. 29, 2015) ("the Grids are irrelevant because the ALJ properly found Bennett could perform her past relevant work at Step Four"); *Justice v. Astrue*, 2011 WL 1087937, at *21 (S.D. W.Va. Mar. 23, 2011) ("Plaintiff's argument that the ALJ misapplied the Grids is without merit because the ALJ did not decide this case using

the Grids at step five; rather, he found that Plaintiff could perform her past relevant work at step four."); *cf. Green v. Comm'r of Soc. Sec.*, 2007 WL 4287528 at *7 (M.D. Fla. Dec. 4, 2007) ("The Court need not determine at this time whether the ALJ mistakenly relied upon the grids. On remand, if substantial evidence supports a finding that Green can perform his past relevant work, the grids are irrelevant.")

As such, Norman's second assignment of error is without merit.

***Closed Period of Disability***

Finally, Norman asserts that the ALJ erred because she did not consider whether Norman might be entitled to a closed period of disability. (ECF No. 16 at 16-18.) Norman contends that she was disabled between November of 2009 (the date of her right knee replacement surgery occurring just a few months after her September 2009 alleged onset date) and January 2013 (the date of her left knee replacement surgery occurring just a few months prior to her March 2013 date last insured). *Id*.

Norman fails to present a legal argument, and merely points to some of the medical evidence she believes would support a finding of entitlement to a closed period of disability. However, Norman fails to explain why she believes the ALJ did not consider whether she was entitled to this closed period. As this Court understands Norman's argument, it amounts to no more than a disagreement with the ALJ's interpretation of the evidence of record. In other words, Norman's position is that the medical evidence supports a finding of a closed period of disability, but, because she received no award, the ALJ must have failed to consider her eligibility. Such a circular argument does not identify any legal error, and asks this Court to overrule the ALJ's decision based on its own interpretation of the medical record. Essentially, Norman is inviting this Court to conduct a *de novo* determination of disability. As outlined in the standard of review section of this Opinion:

> This court must affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence. *Branham v. Gardner*, 383 F.2d 614, 626-27 (6th Cir. 1967). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as

> adequate to support a conclusion." *Besaw v. Secretary of HHS*, 966 F.2d 1028, 1030 (6th Cir. 1992). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

*McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

Because the Commissioner has a zone of choice, legal error is not established by pointing to evidence that could have resulted in a different outcome. While this Court reviews the entire administrative record, it "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 2011 WL 1228165 at * 2 (6th Cir. 2011) (*citing Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). *See also Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 2008 WL 162942 at *6 (6th Cir. 2008) (stating that "it squarely is not the duty of the district court, nor this court, to re-weigh the evidence, resolve material conflicts in testimony, or assess credibility.")

A review of the ALJ's decision makes clear that the ALJ reviewed and discussed evidence from 2009, 2010, 2011, 2012, and 2013. (Tr. 17-20.) As such, it cannot be inferred that the ALJ focused only on Norman's eligibility on or about her date last insured. As such, Norman's final assignment of error is without merit.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision should be AFFIRMED and judgment entered in favor of the defendant.

s/ Greg White
United States Magistrate Judge

Date: January 4, 2016

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).